Gladys I. MITCHELL, Administratrix of Estate of William K. Mitchell, Sr., deceased, Plaintiff,

v.

AMERICAN TOBACCO COMPANY and P. Lorillard Company, Defendants.

Civ. A. No. 6539.

United States District Court
M. D. Pennsylvania.

April 27, 1960.

Paul J. Smith, Richard L. Kearns, Harrisburg, Pa., for plaintiff.

Nauman, Smith, Shissler & Hall, Harrisburg, Pa., for defendant American Tobacco Co.

Hull, Leiby & Metzger, Harrisburg, Pa., Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant P. Lorillard Co.

FOLLMER, District Judge.

This matter is before the Court on motion of defendant P. Lorillard Company to dismiss the Complaint. The action is filed by Gladys I. Mitchell, Administratrix of the Estate of William K. Mitchell, Sr., deceased, against American Tobacco Company and P. Lorillard Company.

Jurisdiction is based on diversity.

Count 1 of the Complaint is a claim for damages under Pennsylvania Survival Act of April 18, 1949, P.L. 512, as amended (20 P.S. § 320.601 et seq.). Count 2 of the Complaint is a claim for damages under Pennsylvania Wrongful Death Act of April 26, 1855, P.L. 309 (12 P.S. § 1601 et seq.).

The Complaint sets forth, inter alia, that on or about February 18, 1958, William K. Mitchell, Sr., died as a result of cancer of the lungs, being more particularly described as bronchogenic carcinoma; that for many years preceding his death, decedent smoked approximately two packages of cigarettes per day; up to the year 1952 he smoked Old Gold cigarettes and from the year 1952 to his death he smoked Pall Mall cigarettes; that the use of the tobacco in the quantity stated precipitated or contributed to the development of bronchogenic carcinoma in decedent, which caused him great pain and suffering and ultimately resulted in his death on February 18, 1958; that defendants were negligent in not warning the public and particularly decedent that the use of the said tobaccos by smoking would precipitate or contribute to the development of cancer; and instead of warning the public and particularly decedent of such bad effects from the use of their products, defendants negligently and carelessly advertised that the use of their products had no ill effects and that the users of their products would receive great satisfaction and enjoyment by smoking their tobaccos.

The reason given by movant defendant, P. Lorillard Company, in support of its motion to dismiss is that plaintiff having admitted that her decedent did not use any of defendant's products after the year 1951,[1] the alleged rights of action against this defendant set forth in the first and second counts of the Complaint are barred by the applicable provisions of statutes of limitations of the Common-

1. Answer to Interrogatories filed May 27, 1959.

wealth of Pennsylvania, particularly the Act of 1895, June 24, P.L. 236 (12 P.S. § 34).[2]

Where jurisdiction is based solely on diversity of citizenship, a recovery can not be had in a Federal court if a State statute of limitations would have barred recovery had the suit been brought in a State court.[3]

Prior to the death of plaintiff's decedent the pertinent Pennsylvania Statute of Limitations in cases of personal injury would be the Act of June 24, 1895, P.L. 236 (12 P.S. § 34), which provides:

"Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law."

Plaintiff alleges in paragraph 6 of her Complaint that the survival action (First Count) is brought on behalf of the estate of decedent pursuant to the provisions of the Act of April 18, 1949, P.L. 512, as amended, apparently intending more specifically Section 603 of the Act.

Section 603 of the Act of 1949 (Fiduciaries Act), 20 P.S. § 320.603, provides:

"An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive."

The Commission's comment on this section is that it is based on the repealed Section 35(b) of the Act of June 7, 1917, P.L. 447, which, as amended (Acts of 1921, 1925 and 1937, see 20 P.S. Ch. 3, App. § 772), read in part:

"Executors or administrators shall have power * * * to commence and prosecute * * * all personal actions which the decedent whom they represent might have commenced and prosecuted * * *."

In the language of the 1917 survival statute, amended as above, the personal action must have been one which the decedent could have commenced and prosecuted at the time of his death. The language of the Act of 1949, however, is even stronger in that the right of action must have survived the decedent, as though the decedent were alive.

Plaintiff alleges in paragraph 12 of her Complaint that the wrongful death action (Second Count) is brought by virtue of the Act of April 26, 1855, P.L. 309.

In Howard v. Bell Telephone Co., 306 Pa. 518, 160 A. 613, the decedent was injured in 1905 and died in 1926 as a result of the injuries and the widow-plaintiff brought suit within a year of the death. The court held, inter alia: (306 Pa. at page 523, 160 A. at page 615)

" * * * while the right of action given by the statute to the widow is a new one, it is dependent upon the existence of a right of action in the husband at the time of his death. The statute cannot be construed to give the widow a greater right than the husband would have if living. The plaintiff's husband extinguished his right of action by failing to assert it within the two year period fixed by the statute. A right of action can be extinguished as effectively by the statute of limitations as in any other way. In this case it was an absolute bar to action by the husband for many years prior to his death. From the time his action was barred, there was nothing the statute could act upon to preserve a right for the widow. There could be no preservation of a right which had ceased to exist. The logic of the situation will bear no other conclusion. To hold otherwise would be to say that a right of action which

2. Statute of Limitations was raised by P. Lorillard Company as an affirmative defense in Answer filed June 29, 1959.

3. Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 110, 65 S.Ct. 1464, 89 L.Ed. 2079.

was legally dead could be revived by the death of the injured person, so as to pass a right of action to his widow or heirs."[4]

In the light of the above it is apparent that to support either the survival or the wrongful death action there must have been a personal action which the decedent might have commenced and prosecuted at the time of his death. That brings us up to the question presently before us which may be posed as follows: When does the Statute of Limitations begin to run where plaintiff's decedent died from lung cancer in 1958, allegedly as the result of having smoked Old Gold cigarettes, the product of P. Lorillard Company, up to 1952?

It is the plaintiff's contention that defendant, P. Lorillard Company, breached its duty to warn decedent of the danger of contracting lung cancer from smoking defendant's cigarettes; that that duty continued until decedent learned, or by the exercise of reasonable diligence could have learned, that he had lung cancer; that the evidence will show that the danger of lung cancer did not become apparent until it was discovered in decedent and that this discovery was well within the two year period.

Defendant, on the other hand, contends that plaintiff having admitted under oath that her decedent did not smoke Old Gold cigarettes or smoke or use any of P. Lorillard Company's products after the year 1951, any cause of action against defendant which plaintiff's decedent might have had no later than January 1, 1952, was barred by the Statute of Limitations two years thereafter.

In Urie v. Thompson, 1949, 337 U.S. 163, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282, the plaintiff in 1941 filed suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The complaint was later amended to charge specific violations of the Boiler Inspection Act, 45 U.S.C.A. § 22 et seq. The complaint set forth that plaintiff had been employed by defendant for about thirty years as a fireman on steam locomotives; that in 1940 he had been forced to cease work by a pulmonary disease diagnosed as silicosis; that defendant knew, or by the exercise of due care should have known, of the danger of silicosis arising from the condition of plaintiff's employment. The Court was met with the question whether, without regard to the legal sufficiency of the claim under either act, that claim was barred as to both acts by operation of the Federal Employers' Liability Act's three year statute of limitations, 45 U.S.C.A. § 56. The Court stated, inter alia:

"If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.

"Nor can we accept the theory that each intake of dusty breath is a fresh 'cause of action.' In the present case, for example, application of such a rule would, arguably, limit petitioner's damages to that aggravation of his progressive injury traceable to the last eighteen months of his employment. Moreover petitioner would have been wholly barred from suit had he left the railroad, or merely been transferred to

4. See also, Staggers v. Dunn-Mar Oil & Gas Company, 312 Pa. 269, at page 272, 167 A. 785; Kaczorowski v. Kalkosinski, 321 Pa. 438, at page 440, 184 A. 663, 104 A.L.R. 1267.

work involving no exposure to silica dust, more than three years before discovering the disease with which he was afflicted.

"We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights. The record before us is clear that Urie became too ill to work in May of 1940 and that diagnosis of his condition was accomplished in the following weeks. There is no suggestion that Urie should have known he had silicosis at any earlier date. 'It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves * * *.' Associated Indemnity Corp. v. Industrial Accident Commission, 124 Cal.App. 378, 381 [12 P.2d 1075, 1076]. The quoted language, used in a state workmen's compensation case, seems to us applicable in every relevant particular to the construction of the federal statute of limitations with which we are here concerned. Accordingly we agree with the view expressed by the Missouri Supreme Court on the first appeal of this case, that Urie's claim, if otherwise maintainable, is not barred by the statute of limitations."

Of course that case is an interpretation of a Federal limitation act and it quotes with approval from a State Workmen's Compensation Act.

In Ayers v. Morgan, 1959, 397 Pa. 282, 154 A.2d 788, 791, the defendant, a surgeon, operated on plaintiff on April 20, 1948. In sewing up the incision, defendant forgot to remove a sponge. Although plaintiff's condition was not relieved by the operation and although he experienced pains for several years thereafter, he did not go to the hospital for treatment until January 3, 1957. At that time the sponge was discovered. Plaintiff's complaint charged negligence in failing to remove the sponge and the defense was the Statute of Limitations. The trial court agreed with defendant and entered judgment for Dr. Morgan. In reversing, Justice Musmanno held that where the plaintiff cannot know that an act of negligence has been committed, the negligence continues, for purposes of the Statute of Limitations, until such time as the plaintiff learns or by the exercise of reasonable diligence could have learned of the negligent act. Hence, if plaintiff was unable to discover the sponge until such time as he alleges, then he is entitled to proceed with his action.

The Court quoted from Lewey v. H. C. Fricke Coke Co., 166 Pa. 536, 31 A. 261, 28 L.R.A. 283, as follows: " 'to hold that the statute begins to run at the date of the trespass is in most cases to take away the remedy of the injured party before he can know that an injury has been done him. A result so absurd and so unjust ought not to be possible.' " Again, it quotes from Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 167 Pa. 136, 152, 31 A. 484, "The question in any given case is not, what did the plaintiff know of the injury done him, but, what might he have known by the use of the means of information within his reach, with the vigilance which the law required of him? * * * When knowledge is impossible, because of the laws of nature, or because of the actual fraud of the wrongdoer, the statute runs from the time of discovery."

The Court then said: (397 Pa. at page 289, 154 A.2d at page 792)

"Did the laws of nature prevent Ayers from ascertaining what was

causing the pain in his abdomen? Certainly he could not open his abdomen like a door and look in; certainly he would need to have medical advice and counsel; certainly he would have to be dependent upon those who with appropriate instruments and devices could pierce the wall of flesh which hid from his own eyes the cause of his wretchedness.

"Both the defendant and the lower Court have apparently misevaluated the specific wording of the Act of June 24, 1895. It seems they regard the crucial words as reading: 'Every suit * * * must be brought within two years from the time *the act was committed.*' The statute, however, says that the suit must be 'brought within two years from the time *when the injury was done.*' The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable."

Finally: (397 Pa. at page 295, 154 A.2d at page 793)

"In this case Ayers became injured when the healthful forces within his body fell over the sponge negligently left by Dr. Morgan on the highway of anatomical normality. Dr. Morgan's actionable negligence stemmed from his failure to timely remove the sponge. This failure constituted a blameworthiness which continued until such time as Ayers learned, or, by the exercise of reasonable diligence, could have learned of the presence of the foreign substance within his body. Ayers avers in the complaint that he did not become aware of the existence of the offending sponge until January 3, 1957. Whether that averment and the other averments can be supported by evidence, only the trial itself can determine. But the plaintiff is entitled by law to have the opportunity to present his evidence."

That, it seems to me, is the only sound, logical and humane conclusion that can be reached in this case, and it seems to be the trend both in Federal and State courts. To paraphrase the court in Ayers, whether plaintiff's averment that the lung cancer did not become apparent until it was discovered at a time well within the two year period can be supported by evidence, only the trial itself can determine, but the plaintiff is certainly entitled by law to have the opportunity to present his evidence, and by the same token defendant would then be entitled to introduce evidence as to any negligence on the part of plaintiff's decedent.

The motion of P. Lorillard Company to dismiss the complaint will be denied.